IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEROY GREGORY, JR., <br> Petitioner, | § <br> § <br> § | |
| v. | § <br> § | Civil Action No. H-07-2364 |
| NATHANIEL QUARTERMAN, <br> Respondent. | § <br> § <br> § | |

## MEMORANDUM OPINION AND ORDER

State inmate Leroy Gregory, Jr., filed this *pro se* section 2254 habeas petition challenging his state conviction. Respondent filed a motion for summary judgment (Docket Entry No. 8), to which petitioner responded (Docket Entry No. 9).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this case.

### I. PROCEDURAL BACKGROUND

Petitioner was convicted of possessing methamphetamine and its immediate precursor, pseudoephedrine, with the intent to manufacture methamphetamine, in cause number 03-09-06614-CR in the 9th District Court of Montgomery County, Texas. Following his plea of "true" to two enhancement paragraphs, petitioner was sentenced to life imprisonment. The conviction was affirmed on appeal. *Gregory v. State*, 159 S.W.3d 254 (Tex. App. – Beaumont 2005, pet. ref'd). The Texas Court of Criminal Appeals refused discretionary review and denied petitioner's state habeas application without a written order. *Ex parte Gregory*, No. 65,685-01.

Petitioner raises claims for ineffective assistance of counsel and actual innocence in the instant petition. Respondent argues that these claims fail as a matter of law.

## II. THE APPLICABLE LEGAL STANDARD

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state court adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *See id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

## III. FACTUAL BACKGROUND

The state court of appeals set forth the following statement of facts in its published opinion:

> Sergeant Larry Bonds testified that he, along with Deputy Mike White, Deputy Ray Zavadil and Deputy Chilcutt, proceeded to a residence to serve a felony warrant on [Cody] Hamilton. Present at the residence were Gregory, [Clyde] Dorsey, Hon, and Hamilton. Dorsey, the property owner, gave Bonds permission to enter. Upon entering the residence, Bonds noticed there was 'no lighting in the house at all' and smelled an unfamiliar odor. He further observed Gregory laying on the couch to the left of the front door. Hamilton was found in a corner in the right-hand back room. After finding Hamilton, the officers brought everyone outside.
>
> Upon Dorsey's request, Deputy Zavadil escorted him inside the residence to the right-hand back room to retrieve his glasses. In plain view, Deputy Zavadil found what appeared to be a marijuana cigarette, a mirror with a white powdery substance and a razor blade laying on it, pipes, such as are used to smoke marijuana, and hypodermic syringes. Zavadil also found what he recognized as marijuana and a device used to roll cigarettes in a can at the edge of the bed. While searching for other occupants in the remaining rooms, Zavadil found more syringes laying around and a planter with a fluorescent

3

light on it and marijuana plants growing in it. Zavadil also saw a clear bottle sitting on the floor. It had a separated liquid in it which Zavadil recognized as a possible by-product of a methamphetamine lab. Zavadil further noted a chemical smell in the house. The Special Investigative Unit (SIU) for the Drug Task Force was called to process the scene. Bonds testified the reason for calling SIU was the odor that was later clarified as methamphetamine.

In the immediate area outside the residence was a burn pile that had several empty blister packs of cold medication in various stages of incineration. Officers also found a well-traveled path to a small pup tent. Zavadil noted a chemical smell in the tent and a five-gallon bucket with two-liter plastic bottles containing a clear liquid.

Philip Cash, a detective with the Montgomery County Sheriff's Department, SIU, testified there was a clandestine methamphetamine laboratory at the residence. He described it as a red phosphorous, iodine, pseudoephedrine reduction laboratory. Cash testified everything needed to manufacture methamphetamine was present. The laboratory appeared to have been functioning and some of the components had been boxed, indicating an operation had occurred there. Cash found Ziploc bags containing a powdery substance. He testified the bags are used in the trafficking end; the drugs are pre-weighed and put in Ziploc bags for sale and distribution. A plastic-like tote box containing hose, gallon-size solvent cans, sports bottles that had substances in them, and plastic hose stained from use, was found in the living room, where Gregory was found. The kitchen area opened up into the living room. In the kitchen, Red Devil lye and sodium hydroxide were sitting on the stove, along with a sports bottle containing a blue-colored liquid (a solvent of some type). Cash testified it was unusual to see a solvent in such a location because it is very flammable. There was also small Pyrex glassware, which is preferred because it holds heat in the microwave. Cash testified,

> The cooking process was not going on at the time like when they boil it in the flask, but the plastic bottles had solvents in them, and the liquids had separation. We also had plastic bottles that had the pseudoephedrine, and when they took the separation of the pseudo from the pills, the binder was still in the bottles. They had the seal taped on there where they poured the solvent out and left the binder in the bottle which was an indication that it had occurred. But the actual steps they were in, I couldn't tell

4

>you what process other than I know the actual cooking process had been done.

Cash could not say when the cooking process took place. Cash testified there were items containing pseudoephedrine recovered at the scene.

A latent print was obtained from a quart-sized Coca-Cola bottle found on the floor of the back bedroom on the left side of the house. That print was matched to the ring finger on Gregory's right hand and the substance in the bottle tested positive for ephedrine.

Cash testified he was given drivers' licenses when he arrived at the scene. Gregory's license was admitted into evidence as State's Exhibit 19. The address on Gregory's license is directly across the street from Dorsey's residence. Cash testified it was common for people involved in this activity to have or use different identifications. State's Exhibit 30 was then admitted into evidence over Gregory's objection. It is a Texas Driver's license with the name of Manuel A. Rodriquez and a Houston address. Both State's Exhibit 19 and 30 have Gregory's photograph.

Detective Robert Clark was called to the residence to investigate a possible clandestine methamphetamine lab. Clark videotaped the location. Clark found a burn pile and testified they typically encounter clandestine methamphetamine labs where they attempt to destroy evidence by burning it. Usually, they find pseudoephedrine packages, blister packages, empty fuel cans, and things of that nature. The camp site was found by following the path to the woods behind the residence. There was a two-liter soda bottle with some type of solvent in it, possibly containing methamphetamine or another step in the cooking process. Clark testified it was common for soda bottles to be used in manufacturing methamphetamine. According to Clark, items removed from the camp site, such as coffee filters, solvents, and red phosphorous, are commonly used in manufacturing methamphetamine. Clark identified a crystal white powder as either processed pseudoephedrine or ephedrine, or finished methamphetamine. Inside the residence, Clark found Red Devil lye, a drain cleaner used to balance the pH when manufacturing methamphetamine. A 'box lab,' a common way to transport a lab, was found on the floor. Empty pseudoephedrine boxes and blister packs, which Clark identified as the precursor for manufacturing methamphetamine, were found in greater quantity than would be consistent with personal consumption. Sergeant David Holden testified crushed pseudoephedrine tablets were found at the scene. Clark

found a soda bottle, commonly used as a reaction vessel to separate solutions. He also testified pseudoephedrine is processed to separate the ephedrine. A triple-beam scale was found. There were cases of matches, commonly found in methamphetamine labs utilizing red phosphorous to manufacture methamphetamine. Clark testified a large quantity of matches are required to obtain the necessary amount of red phosphorous.

Minh Nguyen, a chemist for the Department of Public Safety Crime Lab in Houston, Texas, performed an analysis of 95 percent of the exhibits submitted to him, the remaining samples only had a trace amount. The samples were positive for methamphetamine (959.07 grams), iodine (19.19 grams), and ephedrine (905.09 grams). Nguyen testified that while pseudoephedrine was found in some of the methamphetamine samples, all of the exhibits contained either pseudoephedrine or methamphetamine.

Because Gregory was not in exclusive possession of the place where the contraband was found, it cannot be concluded he had knowledge or control over the contraband unless there are additional independent facts and circumstances affirmatively linking him to the contraband. Evidence affirmatively linking the accused to the contraband will suffice for proof that he possessed it knowingly.

* * * *

The evidence affirmatively linking Gregory to the contraband showed the contraband was in plain view, conveniently accessible to and in close proximity to the accused, an odor of contraband and paraphernalia to use the contraband were present, the place where the contraband was found was enclosed, and the amount of contraband was large. The bottle with Gregory's fingerprint was located inside the residence, an area not generally accessible to the public, and contained a precursor. After reviewing all of the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt.

*Gregory*, 159 S.W.3d at 257-260 (citations omitted).

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment in a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner claims that trial counsel was ineffective in failing to investigate and call his co-defendants as witnesses, and in failing to object to the indictment.

A.   <u>Failure to investigate and call witnesses</u>

Petitioner argues that counsel failed to investigate and call as witnesses co-defendants Clyde Dorsey and Cody Hamilton. Petitioner claims that, if called as witnesses, Dorsey and Hamilton would have testified that petitioner had slept over at the house the night of the police raid and had no knowledge of the drugs. Petitioner argues that, armed with this additional evidence, the jury would have acquitted him.

Dorsey and Hamilton submitted written statements in petitioner's state habeas proceeding. They each stated that petitioner had slept overnight at the house the night of the police raid and that petitioner was unaware of the drugs. *Ex parte Gregory*, pp. 15-16. Dorsey stated that the soda bottle of chemicals with petitioner's fingerprint on it "could have come from anywhere" because petitioner's family lived across the street. He further stated

8

that he would have testified to petitioner's innocence had petitioner's attorney asked. *Id.*, p. 15. Hamilton stated that he was unsure where the bottle came from, but that petitioner had no knowledge of the chemicals it contained. He further stated that petitioner's attorney never interviewed him, and that he would have testified favorably for petitioner at trial. *Id.*, p. 16. Neither Dorsey nor Hamilton state that they had been available to testify at petitioner's trial. Although Dorsey and Hamilton suggested in their statements that the bottle of pseudoephedrine may have been trash found near petitioner's family's house across the street, they offered no explanation as to why only *petitioner's* fingerprints were on the bottle if someone else had placed the chemicals inside the bottle.

In his affidavit submitted to the trial court, trial counsel testified that Dorsey and Hamilton were petitioner's co-defendants and accomplices as a matter of state law. *Ex parte Gregory*, p. 37. Hamilton pleaded guilty to the charges a week before petitioner's trial; Dorsey pleaded guilty a few weeks after petitioner's trial. *Id.*, p. 38. Trial counsel noted that Dorsey's and Hamilton's statements submitted in petitioner's state habeas proceeding were not signed until over one year after petitioner's trial, after petitioner's conviction was affirmed on direct appeal. *Id.*, p. 39. Counsel testified that according to state law, "an accomplice witness['s] testimony is considered inherently suspect" and that because "such a witness is usually deemed to be corrupt," such testimony should always be "looked upon with suspicion." *Id.* Counsel further testified that neither of the potential witnesses provided him with any exculpatory evidence or information, directly or through their respective

9

counsel, at any time prior to or within thirty days after trial. *Id.*, p. 40. In general, trial counsel testified that Dorsey and Hamilton were inherently suspect witnesses and their proposed testimony "probably not true."

In denying habeas relief under this ground, the state court made the following relevant findings:

> 6. The Court is familiar with the effective performance of trial counsel [name], who has long practiced in the courts of Montgomery County and is qualified for appointment as trial counsel in criminal cases.
>
> 7. [Counsel] has submitted a credible affidavit in answer to Applicant's claims of deficient performance.
>
> * * * *
>
> 10. Based on [counsel's] credible affidavit, trial counsel concluded that the testimony of Clyde Dorsey and Cody Hamilton would be harmful to Applicant's defense.

*Ex parte Gregory*, pp. 238-39.

The trial court further made the following relevant conclusions:

> 2. Applicant failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel.
>
> 3. Applicant failed to prove by a preponderance of the evidence that trial counsel's decision not to pursue the co-defendants as witnesses prejudiced the outcome of the trial.
>
> * * * *
>
> 7. In light of the substantial evidence adduced at trial and reflected in the record, the [statements] supplied by Applicant fail to unquestionably establish Applicant's innocence.

*Ex parte Gregory*, pp. 240-41 (citations omitted). The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

Petitioner fails to present probative summary judgment evidence that counsel's professional judgment regarding the potential use of the accomplices as witnesses was unreasonable under the circumstances. Petitioner further fails to show that, but for counsel's allegedly deficient investigation and failure to call his accomplices as defense witnesses, the result of his trial would have been different.

To the extent petitioner further complains that trial counsel failed to request or obtain an independent chemical expert witness, he fails to establish a necessity for such witness, what favorable evidence the witness would have presented, and that there is a reasonable probability that, but for such deficient performance, the result of his trial would have been different.

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Petitioner has failed to meet his burden of proof with clear and convincing evidence. No basis for habeas relief is shown and respondent is entitled to summary judgment on this issue.

B.     Failure to object to the indictment

Petitioner claims that, because the bottle with his prints on it contained "ephedrine," counsel was deficient in failing to object to the "fundamentally defective" indictment that charged him with possession of "pseudoephedrine."

Petitioner is incorrect in arguing that his indictment was based on his possession of the soda bottle containing ephedrine. The state record shows that petitioner was indicted for possession of 400 grams or more of methamphetamine and possession of an immediate precursor of methamphetamine, pseudoephedrine. Clerk's Record at 4. That these substances were in any particular container was not alleged in the indictment. The evidence introduced at trial included other sources of pseudoephedrine, as described in the state court of appeals' opinion. *Gregory*, 159 S.W.3d at 257-260.

Regardless, petitioner does not show that had counsel raised this objection, it would have been granted. Under Texas state law, a motion to quash an indictment cannot be used to argue that the prosecution could not prove one of the elements of the crime. *Lawrence v. State*, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007). Stated differently, a motion to quash the indictment cannot be used as a "mini-trial" on the sufficiency of the evidence to support an element of the offense. *Id.*; *see also Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005). Trial counsel is not ineffective in failing to raise meritless objections or motions. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). To prevail on his claim, petitioner must show that the objection, if made, would have been granted, and that but for

counsel's deficient performance, the result of the trial would have been different. Petitioner fails to meet this burden of proof, and habeas relief is unwarranted.

## V. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Persons convicted of a crime also are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That is, petitioner must show that but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687-88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available nonfrivolous ground for appeal. *Evitts*, 469 U.S. at 394; *West*, 92 F.3d at 1396. Nor will counsel be deficient for failing to press a frivolous point. Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690-91.

Petitioner claims that appellate counsel was ineffective in failing to raise on appeal the issues of an illegal search and a defective indictment. This Court has already rejected petitioner's claim of a fundamentally defective indictment. As to his other claim, petitioner

argues that appellate counsel failed to "call into question" the validity of the police officers' search of Clyde Dorsey's home. The trial court found, and the record shows, that the search was not challenged at trial; therefore, the issue was not preserved for appeal under state law. *See* TEX. R. APP. P. 33.1.

In rejecting petitioner's claim, the trial court made the following relevant findings:

8. The Court is familiar with the effective performance of [appellate counsel], who has long practiced in the courts of Montgomery County and is qualified for appointment as appellate counsel in criminal cases.

9. [Appellate counsel] has submitted a credible affidavit in answer to Applicant's claims of deficient performance.

\* \* \* \*

15. Based on [appellate counsel's] credible affidavit, appellate counsel did not brief the issue of the search and seizure of the contraband because it was not preserved for review.

*Ex parte Gregory*, p. 239 (citations omitted). The trial court concluded that petitioner failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel. *Id.*, p. 240. The Texas Court of Criminal Appeals relied on these findings in denying habeas relief.

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Petitioner has failed to meet his burden of proof with clear and convincing evidence. No basis for habeas relief is shown and respondent is entitled to summary judgment on this issue.

14

## VI. ACTUAL INNOCENCE

Petitioner asserts that he is actually innocent of the criminal charges based on the ineffective assistance of trial and appellate counsel. Petitioner specifically denies raising a "bare innocence" claim. (Docket Entry No. 9, p. 13.)

Because the Court has determined that petitioner's claims for ineffective assistance of trial and appellate counsel are without merit, it follows that petitioner's claim for actual innocence based on counsels' purported ineffectiveness must fail. Respondent is entitled to summary judgment dismissing petitioner's claim of actual innocence.

## VII. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 8) is **GRANTED**. The petition for habeas relief is **DENIED**, and his case is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 11ye day of June, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE